IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA MURRAY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHILDREN'S HOSPITAL | : | |
| OF PHILADELPHIA | : | NO. 20-6292 |

## MEMORANDUM AND ORDER

In this action, Plaintiff, Angela Murray ("Plaintiff"), brought suit against Defendant, Children's Hospital of Philadelphia ("CHOP" or "Defendant"), alleging that CHOP terminated her employment in violation of Title VII of the Civil Rights Act of 1964 because of her race, in retaliation for a discrimination complaint made on her behalf, in retaliation for exercising her rights under the Family and Medical Leave Act, and in violation of the Pennsylvania Human Relations Act.  Presently before the court are Defendant's motion to compel complete and accurate responses to discovery requests (Doc. 21) and Plaintiff's motion for a protective order or to quash subpoena (Doc. 22), with associated briefing.  For the reasons that follow, Defendant's motion to compel will be granted in part and denied in part without prejudice, and Plaintiff's motion for a protective order or to quash subpoena will be denied.

I.     **PROCEDURAL BACKGROUND**

Plaintiff commenced this action on December 15, 2020, raising the referenced federal and state law claims arising from her May 2020 termination from CHOP.  Doc. 1

("Complaint").[1] During discovery, CHOP sent Plaintiff the following relevant Requests for Production of Documents:

> 3. All text messages, email and/or other communications, correspondence, memoranda, or documents that refer or relate in any way to the complaint(s) on CHOP's "complaint line" that you refer to in paragraphs 23 and 37 of your complaint.
>
> 4. All text messages, email and/or other written communications between you and any other person regarding any issue in your complaint, including but not limited to Margaret McDonald, Heather Davis, John Sestito, Elise Saunders, co-workers, and any of the research physicians for whom you performed administrative work.
>
> 10. All job applications and other documents referring or relating to jobs for which you have applied since your termination from employment at CHOP.
>
> 17. To the extent not covered by a previous request, all records of communications between you and any person at CHOP that related to any of the allegations and/or claims you make in the complaint.

Doc. 21 at 6-7, 8.[2] On June 11, 2021, Plaintiff provided written answers to these four requests, without asserting any objection, stating: "See attached documents. By way of further answer, investigation and discovery are continuing and Plaintiff reserves the right to supplement these Responses." Id. at 7, 8.

---

[1] All pinpoint citations are to the Court's ECF pagination. The facts are not in dispute, except as noted.

[2] Neither side attached the Requests or responses to their motions or responsive briefing, but Plaintiff does not contest Defendant's representations regarding the requests and responses.

Plaintiff's production included text messages between Plaintiff and her former CHOP supervisor Margaret McDonald, various CHOP employees, and former CHOP employee Lauren Siano, as well as email communications between Plaintiff and Ms. McDonald and/or other CHOP employees. Doc. 21-1. However, a review of the text screenshots appears to show that portions of the text threads are missing, see, e.g., id. at 6, while other screenshots show portions of texts that Plaintiff did not produce. See, e.g., id. at 25, 32.

On August 3, 2021, CHOP's counsel deposed Plaintiff. See Deposition of Angela Murray, Docs. 21-2 & Doc. 27-3 (collectively, "Plaintiff Dep.").[3] Plaintiff testified that she was not currently married and not currently employed. Id. at 9, 28. When shown the documents that her counsel provided on June 11, 2021, Plaintiff testified that she did not submit some information regarding text communications with witnesses, particularly Dr. Jennifer Tioseco, and that other efforts to obtain employment were missing, and that she would provide the missing materials. Plaintiff Dep. at 19-22. Plaintiff also testified that she had emailed with Dr. Harry Ischiropoulos. Id. at 220-21. After these communications were not provided in a supplemental response, CHOP's counsel emailed Plaintiff's attorney on more than one occasion in October 2021 to specifically request the information discussed at Plaintiff's deposition, including text messages between Plaintiff and Dr. Tioseco. See October 2021 emails, Doc. 21-3 at 4-5.

---

[3]Defendant does not provide Plaintiff's full deposition transcript as an exhibit to its motion to compel, but only those portions deemed relevant for purposes of the motion. Doc. 21-2. Additional portions of Plaintiff's deposition are attached to Defendant's response in opposition to Plaintiff's motion for a protective order. Doc. 27-3.

Meanwhile, on October 18, 2021, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, District of Delaware, under the name of Angela S. Black.  Oct. 18, 2021 Bankruptcy filing, Doc. 27-4 at 8.[4]  Plaintiff indicated in the bankruptcy filing that she is married.  Id. at 53, 54 (indicating that non-filing spouse is unemployed and receives Social Security benefits).  In response to a bankruptcy question as to whether she had been party to any lawsuit, court action or administrative proceeding in the year prior to filing for bankruptcy, Plaintiff checked the "no" box, despite having commenced the present lawsuit against CHOP in December 2020.  Id. at 64.  She also described her "current" employment as Executive Secretary with CHOP with a gross monthly income of $4,944.21.  Id. at 53.

On November 5, 2021, Plaintiff's attorney deposed former CHOP employee Lauren Siano.  According to CHOP, screenshots of text messages shown to Ms. Siano were incomplete, as some lacked dates, they were not in chronological order, and they contained only partial conversations.  Doc. 21 at 12-13.  By letter following Ms. Siano's deposition, CHOP's counsel indicated that when asked at the conclusion of the deposition to provide complete text messages, Plaintiff's counsel stated, "this is all I have."  See Nov. 5, 2021 letter, Doc. 21-3 at 2.  In the letter, CHOP's counsel asked Plaintiff's counsel to provide Plaintiff's cell phone for forensic examination, and previously-requested information, by November 10, 2021.  Id. at 2-3.

---

[4]Defendant avers that Petitioner did not disclose the October 18, 2021 bankruptcy filing to CHOP, and that CHOP's counsel learned of the filing on November 9, 2021, as a result of his own efforts.  Doc. 27 at 4-5.

By letter dated November 11, 2021, Plaintiff's counsel provided supplemental job applications as well as "more recent text messages with Ms. Siano," and stated that Plaintiff "has no text message or email communications" with individuals including Dr. Ischiropoulos, Ms. McDaniel, and Dr. Tioseco.  See Nov. 11, 2021 letter and supplemental discovery, Doc. 21-4.  Plaintiff's counsel did not include any information regarding Plaintiff's bankruptcy filing or Plaintiff's current employment, and he objected to CHOP's request for Plaintiff's cell phone for forensic analysis, claiming it was "for the purposes of harassment [and] not proportional to the discovery needs of this case."  Id.

On November 12, 2021, after CHOP's counsel discovered Plaintiff's October 18, 2021 bankruptcy filing, Plaintiff amended her bankruptcy petition to disclose the present lawsuit, and changed the name of her current employer to the University of Pennsylvania ("Penn").  Amended Bankruptcy Schedules, Doc. 27-5 at 12, 13.

Also on November 12, 2021, Defendant filed its motion to compel.[5]  Doc. 21. Thereafter, Plaintiff filed a response in opposition, and Defendant filed a reply.  Docs. 23 & 24.

On November 17, 2021, Defendant notified Plaintiff that it intended to serve a subpoena upon Penn, her current employer.  Notice to Serve Subpoena on Penn, Doc. 27-1.[6]  Plaintiff objected to the service of the subpoena and filed her motion for protective

---

[5]At the time Defendant filed the motion, the discovery deadline was November 30, 2021.  By Order dated December 2, 2021, I extended the discovery deadline to February 28, 2022.  Doc. 26.

order or to quash subpoena on November 22, 2021, to which Defendant filed a response in opposition. Docs. 22 & 27.

## II.  LEGAL STANDARDS

Federal courts have broad discretion to determine the scope of discovery and to manage the discovery process. See Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987) ("The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion."). In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." Pacitti v. Macy's, 193 F.3d 766, 777-78 (3d Cir. 1999).

Discovery is governed by Rule 26, which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The same rule also obligates parties to supplement discovery:

> A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: [ ] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective

---

[6]In her motion for protective order, Plaintiff attached two copies of a subpoena CHOP served on Thomas Jefferson, and no notice of a subpoena for Penn. See Doc. 22-3. Plaintiff did not object to the Thomas Jefferson subpoena and it is not at issue.

> information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1)(A).

Under Rule 34, such discovery may include a request for a party "to produce and permit the requesting party or its representative to inspect, copy, test, or sample" electronically stored information or "any designated tangible things" within "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). However, because "[i]nspection . . . of certain types of electronically stored information . . . may raise issues of confidentiality or privacy," courts weighing whether to allow such discovery "should guard against undue intrusiveness resulting from inspecting . . . such systems." Id. Adv. Com. Note (2006). Rule 37 provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Third-party subpoenas are governed by Rule 45, which provides that parties may "command" a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control. . . ." Fed. R. Civ. P. 45(a)(1)(A)(iii). Such a subpoena may be blocked by court order granting a motion for a protective order or a motion to quash the subpoena. Such motions are governed by Rule 26, which provides that "[a] party or person from whom discovery is sought may move for a protective order," and authorizes the court, for good cause shown, to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Third Circuit has

enunciated a non-exhaustive list of factors that trial courts may consider in determining whether "good cause" exists, including whether the disclosure will violate any private interests, whether the information is being sought for a legitimate purpose, and whether the information will cause a party embarrassment.  Glenmade Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787-91 (3d Cir. 1994)).[7]  The party seeking a protective order bears the burden to establish good cause.  See Fed. R. Civ. P. 26(c); Cipollone v. Liggett Group., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ("[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

## III.    DISCUSSION

### A.    Defendant's Motion to Compel

In its motion, Defendant seeks to compel Plaintiff to provide two categories of records -- complete versions of text messages and email communications, and documentation of monies that she has obtained from other employment following her termination from CHOP.

---

[7]Other listed factors -- whether confidentiality is being sought over information important to the public health and safety, whether the sharing of information among litigants will promote fairness and efficiency, whether a party benefitting from the order is a public entity or official, and whether the case involves issues important to the public -- are not implicated in the present dispute.

1. Text messages and email communications

Defendant argues that the court should compel Plaintiff to provide complete text and email communications because the information is relevant as to circumstances of her termination, and Plaintiff has an obligation to supplement her answers to discovery requests. Doc. 21 at 14-16. Defendant notes that Plaintiff stated at her deposition that she would provide missing text messages and more documentation regarding her efforts to obtain employment after her termination from CHOP. Plaintiff Dep. at 19-22. Defendant also emphasizes that it seeks a forensic analysis of Plaintiff's cell phone and computer only if Plaintiff fails to provide complete text messages from her cell phone or her cell phone provider. Doc. 24 at 1.

Plaintiff characterizes CHOP's accusations as "discourteous and unsupportable," and its motion as "an intrusive fishing expedition." Doc. 23 at 3. Plaintiff argues that Defendant has failed to demonstrate that the text message threads provided by Plaintiff were incomplete, noting that Plaintiff testified in her deposition via Zoom that defense counsel was scrolling too fast for her to read the "75 pages" of texts that were produced by Plaintiff in this case. Id. Plaintiff particularly objects to CHOP's motion seeking Plaintiff's cell phone and computer for forensic analysis, stating "[t]his method of discovery is far too intrusive, harassing and disproportionate to the needs of the litigation," id. at 2, relying on Stewart v. First Transit, Inc., Civ. No. 18-3768, 2019 WL 13027112 (E.D. Pa. Sep. 3, 2019).

In Stewart, the court stated that "[f]orensic examination of computers and cell phones are generally considered a 'drastic discovery measure' because of their intrusive

9

nature." 2019 WL 13027112, at *1 (quoting Tingle v. Hebert, No. 15-626, 2018 WL 1726667, at *6 (M.D. La. Apr. 10, 2018)). The court considered the "'significant privacy and confidentiality concerns'" implicated by a forensic examination, "including that the electronic information might 'contain . . . private personal information that is wholly unrelated to the litigation.'" Id. (quoting John B. v. Goetz, 531 F.3d 448, 460 (6th Cir. 2008)). The court further noted that "'mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant' a forensic examination." Id. (quoting John B., 531 F.3d at 460). After considering these factors, the court determined that a forensic examination of the plaintiffs' personal devices was not warranted because the defendant could obtain the relevant information "without conducting such a deeply intrusive search that will likely disclose irrelevant and confidential information." Id. at *2.[8] Instead, the court ordered the plaintiffs to provide additional discovery and allowed the defendant the right to renew its request if it believed a forensic examination remained necessary. Id.

Here, as previously noted, the text messages which Plaintiff provided to CHOP, which are attached to CHOP's motion at Exhibit A (Doc. 21-1), appear to be incomplete. For example, several of the text messages appear to be out of context or incomplete, and some screenshots show portions of missing texts that Plaintiff did not produce. See, e.g., Doc. 21-1 at 6, 25, 32. Given Plaintiff's ongoing duty to supplement her responses --

---

[8]The relevant information in Stewart concerned whether the plaintiffs used their personal cell phones during their shifts as paratransit drivers while working for the defendant. Stewart, 2019 WL 13027112, at *1.

and in light of Plaintiff's representation that she continues to search for and will produce any additional emails that exist, see Doc. 23 at 4 -- Plaintiff is ordered to obtain and provide any such additional texts and emails, either directly from her own devices or, if the text and email threads no longer exist on her devices, through her cell phone provider, on or before January 14, 2022.

CHOP's alternative request for a forensic analysis of Plaintiff's personal devices implicates the proportionality and privacy concerns discussed in Stewart, which CHOP appears to concede. See Doc. 24 at 1 ("CHOP has only asked for a forensic analysis of Plaintiff's cell phone and computer if Plaintiff continues to fail to provide the full text messages from Plaintiff's cell phone or her cell phone provider."). I agree that the appropriate course of discovery in this matter is for Plaintiff to provide full communication threads from her devices or her cell phone provider first, and to resort to a forensic analysis only if the preferred method does not occur. Therefore, as in Stewart, this aspect of the motion will be denied without prejudice, and may be raised again by Defendant if Plaintiff fails to supplement her discovery with complete text and email threads on or before January 14, 2022.

        2.      Documentation of earnings from employment after CHOP

Defendant also seeks to compel Plaintiff to provide documentation of monies that she has obtained from other employment after CHOP, which is relevant to Plaintiff's claims for damages. Doc. 21 at 15-16. Defendant avers that it is also entitled to discover Plaintiff's employment status and income in light of her October 18, 2021 bankruptcy

filing in which she wrongly indicated that she continued to work for and receive income from CHOP.  Id. at 16-17.

Plaintiff has not objected to Defendant obtaining information as to Plaintiff's attempts to find employment, nor has Plaintiff objected to subpoenas that Defendant has sent to Plaintiff's previous employers.  See Doc. 22-2 at 2 (Plaintiff does not object to Defendant's subpoenas on Plaintiff's previous employers), 4 ("Plaintiff has produced all relevant information about his [sic] post-termination compensation and is willing to supplement same throughout this litigation in order to demonstrate mitigation of damages and to determine front pay.").  Rather, Plaintiff objects to Defendant serving a subpoena on Penn, her current employer.  Because this subpoena is the subject of her pending motion for protective order or to quash subpoena, I will defer this issue to the next section.

### B.    Plaintiff's Motion for Protective Order or to Quash Subpoena

Plaintiff moves the court for a protective order or to quash a subpoena which CHOP intends to serve on Plaintiff's current employer, the University of Pennsylvania, calling it "an effort to harass, intimidate and scare Plaintiff." Doc. 22-2 at 4.  Plaintiff also characterizes the subpoena as overly burdensome and argues that the documents sought are irrelevant and could potentially subject Plaintiff to retaliation by notifying her current employer that she had sued a former employer. Id. at 1-2.  Defendant counters that the information sought is relevant in light of Plaintiff's claim for a variety of employment-related damages, and because Plaintiff has placed her credibility at issue by

failing to disclose a bankruptcy filing that contained false information and omissions. Doc. 27 at 2-3.

I agree with Defendant.  First, Plaintiff in her lawsuit seeks an array of employment-related damages, including back pay, front pay, past lost wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost benefits, and lost future earning capacity.  See Complaint at 12.  Therefore, Plaintiff has placed her earning history and present income at issue.  See, e.g., Hite v. Peters, Civ. No. 07-4492, 2009 WL 1748860, at *4 (D.N.J. June 19, 2009) (plaintiff's request for protective order seeking employment records from post-termination employer denied because "Plaintiff's post-termination employment records are relevant under Rule 26 standards to the issue of mitigation of damages, and specifically, the amount that Plaintiff could have earned with reasonable diligence").  Defendant avers that it does not know when Plaintiff began working for Penn, her job title, compensation, hours, attendance records, performance, and disciplinary record, all of which could shed light on the amount Plaintiff earned or could have earned following her termination from CHOP.  Doc. 27 at 9-10.  These facts have a direct bearing on the issue of Plaintiff's failure to mitigate damages -- an issue upon which Defendant has the burden of proof.  See Hite, 2009 WL 1748860, at *2 (defendant-employer bears burden of proving failure to mitigate) (citing Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir. 1995)).

Second, although Plaintiff avers that all information related to her post-termination compensation has been provided and would be supplemented, see Doc. 22-2 at 4, Plaintiff's own actions undermine confidence in the veracity of this statement.  Plaintiff's

13

discovery responses, already supplemented, continue to appear to be incomplete. Plaintiff failed to disclose her October 18, 2021 bankruptcy filing to Defendant, which instead learned of the filing as a result of its own efforts. In that bankruptcy filing, Plaintiff claimed that she remained employed by CHOP -- an untruth which she compounded by falsely claiming that she had no lawsuits pending. She later amended her bankruptcy filing to identify the lawsuit and state that she worked at Penn, but did not update her discovery response to update the latter information. At her deposition she testified that she was not married and had no other names than Angela Murray, but in her bankruptcy petition two and a half months later she stated that she was married and that her name was Angela Black. While it is certainly possible that Plaintiff's marital status and name changed in the interim, Plaintiff did not amend her discovery responses.[9] Under the circumstances, it is entirely understandable for Defendant to believe that the only truthful source of Plaintiff's employment information would be from third parties, such as Penn, rather than from Plaintiff herself.

      Plaintiff fails to establish good cause for issuance of a protective order pursuant to Rule 26(c)(1), or that the subpoena should be quashed. To the extent Plaintiff argues that Defendant's subpoena could potentially subject Plaintiff to retaliation by placing Penn on notice that she has sued a former employer, see Doc. 22-2 at 1-2, this argument is unpersuasive. Plaintiff's lawsuit is not sealed and is therefore in the public domain.

---

      [9]CHOP also alleges that Plaintiff lied in her deposition testimony that she was never previously fired, see Plaintiff Def. at 28, in light of a subpoena response from a prior employer showing that Plaintiff was fired for repeated unexcused lateness. Doc. 27 at 4 & n.3.

14

Additionally, retaliation by current or future employers is forbidden by existing anti-discrimination laws, which provide remedies for discrimination or retaliation by prospective employers.

For these reasons, Plaintiff's motion for a protective order and for a motion to quash the subpoena will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA MURRAY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHILDREN'S HOSPITAL | : | |
| OF PHILADELPHIA | : | NO. 20-6292 |

# ORDER

AND NOW, this 17th day of December, 2021, upon consideration of Defendant's motion to compel complete and accurate responses to discovery requests (Doc. 21), to which Plaintiff has filed a response in opposition (Doc. 23), and Plaintiff's motion for a protective order or to quash subpoena (Doc. 22), to which Defendant has filed a response in opposition (Doc. 27), IT IS HEREBY ORDERED as follows:

1. Defendant's motion to compel (Doc. 20) is GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE.  The motion is GRANTED to the extent that Plaintiff is ordered to obtain and provide all responsive texts and emails either directly from her own devices or, if the text and email threads no longer exist on her devices, through her cell phone provider, on or before January 14, 2022.  The motion is DENIED WITHOUT PREJUDICE as to the request for a forensic analysis.

2. Plaintiff's motion for a protective order or to quash subpoena (Doc. 22) is DENIED.

BY THE COURT:

/s/ ELIZABETH T. HEY
_____
ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE